UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re: | ) |
| | ) |
| **JOSEPH TOPPI, JR.** | )      **Chapter 13** |
| | )      **Case No. 07-20331** |
| | ) |
| **Debtor** | ) |
| | ) |

## MEMORANDUM OF DECISION

Debtor Joseph Toppi, Jr. claims a Maine residence exemption in his right to receive $50,000 from his former spouse pursuant to an equitable property division that attended his divorce. The Chapter 13 trustee objects.

Because Toppi parted with all his interest in the marital residence before bankruptcy and because he retains nothing that qualifies for exemption under Maine law, the trustee's objection is sustained.[1]

### Background

Joseph Toppi filed a voluntary Chapter 13 petition on April 27, 2007. He claimed a residence exemption[2] in his "interest in martial property," valued at $50,000. The trustee timely

---

[1] This memorandum of decision sets forth findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. Unless otherwise indicated, all statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq*.

[2] Maine law establishes an exemption in a debtor's "residence," subject to limits and conditions set forth more fully below. See 14 M.R.S.A. § 4422(1). Such exemptions are generically referred to as "homestead" exemptions.

objected.

With issues joined, the parties submitted the contest for decision on a stipulated record. But, in an eleventh-hour attempt to supplement the stipulation, Toppi filed an affidavit. The trustee took exception and the matter proceeded to trial for the limited purpose of permitting Toppi's live testimony on the few contested points outside the stipulation.

## Facts

After 18 years of marriage, Joseph and Linda Toppi divorced on January 23, 2006. The divorce court gave effect to the couple's negotiated property settlement. The marital residence was awarded to Linda, who in turn was ordered to pay Joseph a $50,000 lump sum in seven years or, if it occurred sooner, upon the property's sale.

Pursuant to the divorce decree, on April 27, 2006, Joseph quitclaimed the residence to Linda.[3] The deed was recorded immediately. Linda, now the sole owner of Joseph's former home, continues to reside there with the couple's son and minor daughter.

## The Statutory Entitlement

Maine has "opted out" of the Bankruptcy Code's federal exemption scheme, 11 U.S.C. § 522(b)(1); 14 M.R.S.A. § 4426, Dubois v. Fales & Fales, P.A. (In re Dubois), 306 B.R. 423, 425 n.3 (Bankr. D. Me. 2004). Thus, Toppi's exemption entitlement is governed by Maine statute, which provides:

> The following property is exempt from attachment and execution, except to the extent that it has been fraudulently conveyed by the debtor.
>
> 1. **Residence.** The exemption of a debtor's residence is subject to this subsection.

---

[3] See Exh. C dated April 27, 2006, doc. #19.

> A.   Except as provided in paragraph B, *the debtor's aggregate interest*, not to exceed $35,000 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence . . . .
> . . . .
> C.   That *portion of the proceeds from any sale of property which is exempt under this section* shall be exempt for a period of 6 months from the date of receipt of such proceeds for purposes of reinvesting in a residence within that period.

14 M.R.S.A. § 4422(1)(emphasis added).[4]

Liberal construction of exemptions in favor of debtors falls easily within the ambit of the Bankruptcy Code's "fresh start" policy. In re Cole, 185 B.R. 95, 97 (Bankr. D. Me. 1995)(citations omitted); see also Bartlett v. Giguere (In re Bartlett), 168 B.R. 488, 493 (Bankr. D.N.H. 1994)("This 'fresh start' is only feasible if the debtor emerges from bankruptcy with a means of providing the necessities of life, including a roof overhead, and the homestead exemption is directed at making this attainable.").

**Burden of Proof**

Absent timely objection, a claim of exemption is prima facie valid. Shamban v. Perry (In re Perry), 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006). An objecting party bears the burden of proving the exemption is improperly claimed. Fed. R. Bankr. P. 4003(c); see also In re Cole, 185 B.R. at 96. If the objector introduces evidence effectively challenging the exemption, the burden shifts to the debtor to produce evidence in support of his claim. See In re Bennett, 192 B.R. 584, 586 n.9 (Bankr. D. Me. 1996)(citations omitted). All the while, the ultimate burden remains with the objector. Fed. R. Bankr. P. 4003(c); see also 9 Alan N. Resnick & Henry J. Sommer, eds., *Collier on Bankruptcy* ¶ 4003.04, at 4003-17 (15th ed. rev. 2007)("Although an

---

[4] The statute includes provisions increasing the potential exemption claim to $70,000, under certain conditions. For today, there is no need to address the statutory exemption limit, and whether Toppi could claim $35,000; $50,000; or $70,000.

objecting party's evidence may shift the burden of production to the debtor, under the rule, the ultimate burden of proof remains with the party objecting to the exemptions.").

As will appear, the burden of proof creates no issue here. Toppi's exemption claim fails as a matter of law.

**Discussion**

It makes sense to begin at the beginning: What potentially exempt "interest" in the residence did Toppi retain on the date he filed his bankruptcy petition? The answer is "none." He was without legal title. He held no lien. And he had no possessory rights. At bankruptcy, he held *no interest* in the property. Thus, he cannot sustain an exemption claim based on the value of his "aggregate interest." 14 M.R.S.A. § 4422(1)(A). The fact that his daughter, concededly a "minor dependent," resides in the home adds nothing. She may reside there, but the statute bestows an exemption on account of a minor dependent's residency only to the extent of the debtor's "interest" in the residence. Id.

Toppi's exemption claim can only stand if Linda's unsecured obligation to pay him $50,000 (in seven years or upon the property's sale) qualifies under 14 M.R.S.A. § 4422(1)(C) as "proceeds from the sale" of exempt property. Let's assume that release of Joseph's interest in the real estate was the exclusive *quid pro quo* for Linda's obligation to pay him $50,000, an assumption that might or might not withstand rigorous inquiry given the panoply of rights and interests at play in a divorce proceeding. All Toppi received as consideration for his quitclaim was Linda's unsecured obligation. That obligation represents Joseph's "proceeds" from the

disposition of his interest in the residence, but it does not qualify for exemption.[5]  The residence proceeds exemption endures only for "a period of 6 months from the date of the receipt of such proceeds" and is exempt for purposes of "reinvesting in a residence within that period."  14 M.R.S.A. § 4422(1)(C).  Toppi parted with his real estate interest in early 2006.  He has held the proceeds (*viz*, Linda's unsecured promise) well more than six months.  His (controverted) assertion to reinvest "proceeds" in a "residence" is of no moment.  It comes too late.[6]

Toppi likens the facts of this case to that of In re Maylin, 155 B.R. 605 (Bankr. D. Me. 1993).  Like this case, Maylin addresses the application of Maine's residence exemption to proceeds flowing from a divorce-related real property disposition.[7]

In Maylin, the debtor had been ordered to part with his interest in the marital residence as part of a comprehensive property division that required his former spouse pay him $8,000.  The divorce judgment did not designate what portion of the $8,000 was allocable to the debtor's

---

[5]  The Bankruptcy Code provides no express definition of "proceeds." Morris v. Vulcan Chem. Credit Union (In re Rubia), 257 B.R. 324, 330 (B.A.P. 10th Cir. 2001), *aff'd*, 23 Fed.Appx. 968 (10th Cir. 2001)(McFeeley, J., dissenting).  Maine law defines "proceeds" as "[w]hatever is acquired upon the sale, lease, license, exchange or other disposition of collateral . . . ." 11 M.R.S.A. § 9-1102(64).  The term "collateral" incorporates the principle that proceeds of proceeds are themselves proceeds.  11 M.R.S.A. § 9-1102 cmt. 13(c) (2006).

[6]  Practically speaking, what Joseph negotiated for, and received, in the property settlement was a form of "proceeds" without substantial utility for investment in a new residence (within six months), and, therefore, without meaningful capacity for achieving exempt status.  Its imperfect constitution does not change the fact that he *received* it and that the six month period passed before his bankruptcy.

It does no good to urge that the $50,000, when ultimately paid, will constitute "proceeds" under Maine law. It would qualify as proceeds by being *proceeds of proceeds*.  See supra n.5.  Nevertheless, Joseph received the initial proceeds (Linda's obligation) too long ago for it to qualify for exemption.

[7]  Unlike this case, Maylin treated the issue in the context of a debtor's § 522(f) lien avoidance motion.  The distinction has no analytical significance here.

release of his interests in the real estate. However, he introduced evidence, including the divorce court's valuation of all the couples' property, supporting his calculation that $7,500 was attributable to his quitclaim of the residence. Maylin, 155 B.R. at 615. The court determined that attributing $ 7,500 to the real estate transfer was a "reasonable construction" of the divorce judgment, and commented that the lien creditor had introduced nothing to challenge that calculation. Id.

Toppi argues that Maylin supports his claim because the court determined that a property settlement requiring the debtor to release his residential real estate interests in exchange for a court-imposed payment obligation constituted a "sale" of an exempt residence within the meaning of 14 M.R.S.A. § 4422(1)(C). So far so good. But Maylin's analysis falls short of his purpose: In challenging the exemption claim, the lien creditor only argued that the divorce court's property division decree was not a "sale." It did not posit, as the trustee does here, that the *obligation* to pay constituted sale "proceeds" and that, given the time that passed between "receipt" of that obligation and the debtor's exemption claim, § 4422(1)(C) could not apply. Id.[8]

**Equitable Relief**

Citing Davis v. Cox, 356 F.3d 76 (1st Cir. 2004), Toppi asks that equitable relief issue, urging imposition of a constructive trust (on the property now owned by Linda) as a means of preserving his exemption. In Davis, the First Circuit imposed a constructive trust to protect

---

[8] In Maylin, the property settlement payment required by the state court was due to be paid on or before January 1, 1992. The debtor filed for bankruptcy relief later, on March 9, 1992. It appears the debtor's spouse had the $7,500 in hand when served with the lien creditor's process. The lien creditor treated the $7,500 fund as the debtor's *initial* proceeds, ignoring the distinction that makes all the difference today. As a product of the arguments the parties pressed, the Maylin opinion describes the debtor's rights as arising from an order requiring him to part with exempt real estate in return for *money*. Maylin, 155 B.R. at 615.

marital property interests of a non-debtor ex-spouse to effectively defeat a debtor's exemption rights. Determining the available legal remedies to be insufficient, the appellate court commented: "It is commonplace that where legal remedies are inadequate, they may be supplemented by appropriate equitable ones." Davis, 356 F.3d at 89.

Davis is of no help to Toppi. Its holding is narrow, fact-specific and, at its heart, Davis requires a showing of "special equities," grounded in misuse of marital assets in defiance of state court orders. Davis, 356 F.3d at 84-85. This case presents no reason to stretch the concepts the Davis court grasped in reaching its decision. Toppi has got exactly what he bargained for when he negotiated the property settlement and subsequently filed for bankruptcy relief.[9]

**Conclusion**

For the reasons set forth above, the trustee's objection is sustained. The debtor's claim of exemption is disallowed.

November 15, 2007  
Date

/s/ James B. Haines, Jr.  
James B. Haines, Jr.  
U.S. Bankruptcy Judge

---

[9] Of course, Toppi might have protected the value of his property settlement more effectively through other means. He testified that the settlement was achieved through the offices of a non-lawyer mediator and that, in constructing the settlement, documenting it, and securing its court approval, neither he nor his wife had the benefit of legal counsel.